The United States Code of Appeals for the Fifth Circuit is now open according to law. God save the United States, this honorable court. Thank you and welcome both of you. I would ask you to leave your audio off until it's time for you to speak and then you turn it on. And I would like to say, Judge Stone that, I'm sorry, not judge, but Mr. Stone, that I'm sorry that you had the issue back in September. I hope you're okay now. And I appreciate you, Mr. Garcia, coming back again to speak. And I would say that Mr. Abrams did work hard to provide the live OA, but I'm happy to have you all here on the Zoom OA. So on that note, we'll go ahead and get started and we'll start with Judge Stone on behalf of DOE. I'm sorry, Jud Stone, Mr. Stone. I promise I take it in only the most flattering way. Thank you. Thank you, your honors. And may it please the court. Since the court's been gracious enough to hear argument in this case a second time, I'd like to briefly review the two reversible errors the district court made before turning to a few points that came up in the previous argument. First, the district court erred in jurisdictionally dismissing Dr. Doe's APA claim because the Supreme Court's guidance in Brotherhood of Locomotive Engineers directs district courts to look at the original agency record when determining if a challenger relies on new evidence in a reconsideration petition. The district court disregarded that guidance when it compared Dr. Doe's new evidence to what was available during judicial review in his first case rather than in the agency record. Second, the district court erred in barring Doe's as-applied due process claim because Race Judicata bars only claims that could have been raised in a previous case. Doe didn't seek reconsideration until after the end of his previous case, so Race Judicata cannot foreclose a due process claim regarding that reconsideration. Now at the previous argument, the government made a few points I'd like to start off addressing. At the outset, the government conceded that Dr. Doe had not behaved in a dilatory manner in pursuing his claims, and that was the sole basis for the district court's jurisdictional dismissal of Dr. Doe's APA claim. The government then invited this court to read the Supreme Court's guidance in BLE regarding what constitutes new evidence, that is, evidence not available in the original agency proceeding, as dicta. And finally, it tried to defend the district court's Race Judicata bar of Dr. Doe's as-applied due process claim by asking this court to disregard how Dr. Doe, acting pro se, understood his own complaint. Unless the court prefers otherwise, I'll start by addressing those arguments. Now first, at this point, no one defends the district court's reasoning behind its jurisdictional dismissal of Dr. Doe's APA claim. The district court's rationale for why Dr. Doe's thousands of pages of new evidence, including depositions unavailable in the original agency proceedings, was that new evidence didn't qualify under BLE because it was, and I'm quoting the district court here, in Dr. Doe's control, were available to him long ago. That's at page 315 of the record. In other words, he was faulting Dr. Doe for being dilatory, for waiting, for sandbagging. Now the first thing the counsel for the United States said at the last argument we came to the podium was that he didn't view Dr. Doe's dilatory. Instead, he thought this was a finality problem, the litigation hadn't come to an end. But the first thing he disclaimed was that Dr. Doe behaved in a dilatory manner. Without that determination, without the notion that Dr. Doe is somehow dilatory, all we're left with is first, the strong presumption of judicial review of administrative action this court has recognized time and again, and then what one of this court's sister circuits calls the narrow exception under section 701A2 for matters committed to agency discretion by law. As Justice Scalia explained in BLE, whether an agency's denial of a reconsideration petition can be judicially reviewed, namely whether it's committed to agency discretion by law, depends on whether it fits in one of two categories. Either one, it's based on a claim of manifest error, which as Justice Scalia pointed out meant the two records between the reconsideration petition and the original petition were the same, or if it was based on new evidence or changed circumstances, which the record for reconsideration and the original record were different. The key here, as Justice Scalia explained, was sort of the heart of what judicial review of an administrative action is. It's twofold. It's whether or not, a court determining whether or not an agency came to a reasonable conclusion and whether it explained its reasons reasonably based on the record in front of it. If you're dealing with the same record twice, an identical record twice, then it's functionally akin to, in the court's words, an en banc petition. It's acting in a tradition of unreviewability, as Justice Scalia wrote, in which case it falls under 701A2, but if there's new evidence, evidence not available at the original agency proceeding, that's the exact phrase BLA uses, it's not available in the original proceeding, then you're dealing with a new evidence circumstance where there's at least judicial review available. That touchstone is important because here no one disputes, not the district court, not my friends on the other side, no one disputes that the new evidence on which Dr. Doan relies, he procured somewhere between 2016 and August of 2023 during very protracted litigation in New York state court. Nobody questions nor could they, but the agency proceeding came to a conclusion in 2012. By definition, this evidence is new by any measure. Mr. Stone, in thinking about the new evidence requirement, does it matter that the evidence, must the evidence be materially new? That is, if you had, say, imagine two documents, right, one available in the first litigation, the second not available to the second litigation, would it matter if the documents were materially identical? Your Honor, I think there'd be two different thresholds implicated there, and this is a But one circuit, the seventh is implied, has sort of resolved by implication. In Village of Barrington, the seventh circuit determined that there was sufficient new evidence for purposes of saying you've come within the presumption of judicial review, but not sufficient new evidence is to require a different result from the agency. So I think there is a threshold showing there that's less than the merits. I would think that that threshold showing would be something implied in what is new evidence, which is to say it has to be something new and different. It also has to be evidence, right? It has to make a material fact to dispute more or less likely to be true. I think because of the strong presumption of judicial review and the tradition that what qualifies as evidence requires only a fairly faint and persuasive value, that threshold determination would be low. But by any regards of what would be enough, Your Honor, there's enough here. I mean, Dr. Doe is presenting deposition evidence from hospital officials regarding that first that they knowingly made false statements in the adverse action report on the topics that he's been challenging are false all along and submitted them knowingly. At minimum, that gives rise to an inference of, let's say, something less than candor before HHS. At maximum, it gives rise to an inference of deliberate fraud. So I think, Your Honor, that's a difficult question. I think the threshold is low. I think there is something there, but I think this clears it regardless. So, in other words, whatever the materiality standard here is, it's easily met. So we don't have to define the standard here. That's right, Your Honor. I don't think this court has to define the standard. I think if the court wanted to reach out and resolve that question, I would think the answer would be it's something along the lines of it tends to make a fact to dispute, you know, material fact to dispute more or less likely. I'd also say this is a kind of odd case to define that, though, because the particular statutory obligation that Congress imposed on HHS is to ensure accuracy. That's the word in the statute, and so when your obligation by statute is to ensure accuracy in these reports, the ordinary determination that if something is material or not, I think kind of takes a weird secondary position, because Congress has determined accuracy is the charge. That means every false statement, in some sense, is at least material if it's the thing that's being objected to. So I don't think it's necessary for this court to embrace it to particularly define the standard, and I think this would be kind of a strange case in which to do it. In any event, presumably, if we're talking about something that plausibly could have affected an agency decision, not that it is destined to, that would be too high of a standard, but that it could have plausibly affected an agency decision to motivate the agency to go a different way, as long as that's plausible, I would think that that would be enough. I think that's right, Your Honor. I think, so my friend on the other side several times tried to exhort this court to look at the ultimate merits. I don't think that's, not only is it not appropriate because it hasn't been passed on, it's not even possible here. This record doesn't contain the 7,000 plus pages of material that Dr. Doe submitted to the agency, nor does it contain the original agency record, so I don't think it'd be possible for this court to pass on whether or not these particular materials would necessarily make that movement. There are also Chenery issues, right? The agency could decide to reach the same result on a completely different ground, etc., etc. Those are issues we need not deal with today, obviously, and indeed we should not deal with it, I would say. Couldn't agree with you more specifically on Chenery, Your Honor, to draw the court's attention specifically to what the only thing the HHS decisions, HHS said, and I'm going to quote here, it's at ROA 129 to 130, after review of the information available as well as your request, it has been determined you are not eligible for additional administrative review of the report. I don't think that can be fairly read as saying we've reviewed your evidence and found it unpersuasive. I think that just says we've determined you get no more process because you get no more process, and so Chenery binds the agency to that being the sole reason for its refusal. I don't think that the agency is free now to say, actually, none of this is going to be persuasive. We've thought about it. This is all, you know, this is all sort of pointless formalism. What would you say is your strongest case for new evidence? Is it the no suspension or is it the no corrective action? Just focus on what's the most compelling new evidence. I would say the most compelling piece was that, and this is at page 120 in the record, the hospital admitted in the New York litigation that there was, and I'm quoting now, there's no question of fact that there was no adverse or corrective action being contemplated when Doe resigned. So that would require us, I take it, to accept your definition of investigation? Well, no, your honor, at a bare minimum, there are statements in the report regarding whether or not, whether or not Dr. Doe's fell below the standard of care and whether or not he was investigated because of the exercise of his medical judgment. A statement saying we're going to investigate, but we're sure we're not taking adverse action. We're sure we're not taking corrective action. I think it's impossible to reconcile that declaration with the notion that he was being investigated for malpractice. What hospital would say, we're engaging in a malpractice investigation, but we've determined in advance we're definitely not going to engage in adverse or corrective action. So I guess I'm having a hard time, Mr. Stone, with the, so that the act defines a professional review action to include, quote, a formal decision not to take such an action or make such a recommendation. So that's section one, one, one, five, one subsection nine. So if the hospital says there's no question of fact that there was no adverse or corrective action being contemplated by PBMC against Doe, are you saying that that's false or you're saying that that's different than some position that they've taken either in the agency review provision or proceeding or some other proceeding? I'm saying, your honor, that that means that the statements that, the statement, and now I'm going to page 305 in the record, because, again, recall that the obligation is these reports be accurate, at minimum, the statement that the hospital has been, the quality reassurance for you in this matter indicated departures by the physician from the standard of care with regards to laparoscopic appendectomy. Our point is that no such investigation occurred and they never made such a finding. They did not, in fact, engage in an investigation to see whether he followed the standard of care and they did not make such a determination. Now to be clear, the statute precludes the secretary from essentially reweighing whether or not a hospital would be correct. We're not making that argument. We're making an argument that as a historical matter, no such finding was ever made. It did not happen. The eventual case review, the case review that's required, did not, was not contemplating revoking privileges or otherwise, and that same statutory scheme, Judge Oldham, contemplates that there will be certain things, certain reviews of cases that are not investigations precisely because they're not contemplating suspending privileges, they're not being engaged in lieu, there are people being suspended or resigning in lieu of such investigations. Not every investigation or everything that we might colloquially call an investigation is a reportable event. I see I'm coming down to just about a minute and a half left, so I'd like to speak just two or three quick words on race judicata. Your Honor, there's a reason why the government last time tried to ask this court to interpret Dr. Doe's as applied claim in essentially the least charitable, least liberal light possible rather than the most. Dr. Doe's claim, I'm going to quote from it here, paragraph three, quote, this lawsuit inter alia challenges HHS's January 2024 decision. It's an as applied due process claim about the agency simply refusing to look at his new evidence. That may win or lose on the merits, but again, quoting from paragraph 549, a quote, decision by the agency not to review new evidence, and I'm eliding a little here, and not to Dr. Doe's constitutional right to due process. If the principle that pro se litigants are going to have their pleadings read generously or read liberally means anything, it has to mean that something that can be fairly read as an unbarred, unbarred by race judicata as applied due process claim should be read that way and not sort of tortured to be read as a facial claim about which perhaps there'd be collateral estoppel or some other preclusive effect. I think the race judicata point is just that simple. It couldn't have come up in case one, so it can't be barred in case two, and then it can be fairly read as being a claim targeting that second agency action and not the first. I see I'm out of my time, Your Honor, if there are no further questions. Okay, thank you, Mr. Stone. You've saved time for rebuttal, and we will now turn to Adrian Garcia on behalf of the U.S. Department of HHS. May it please the Court. Thank you, Your Honor. The first thing, I'll just start where Mr. Stone kind of started with the argument about whether Dr. Doe has been dilatory. Yes, yes, we did begin our whole argument the previous time mentioning kind of the lengthy record of litigation that Dr. Doe has been involved in. That lengthy record is in no way a concession that Dr. Doe chose, specifically chose, to not present this new evidence in the D.C. proceeding. And this deliberate decision, whether it be dilatory or not, the deliberate decision itself is something that Dr. Doe concedes in his complaint as cited by the district court and the magistrate court in their decisions looking at the issue. So, you know, whether he's been dilatory or not, whether he's been dilatory or not in the overall litigation, it would be hard to characterize that since he's been involved in this litigation for over a decade. But whether he deliberately made decisions to present certain evidence to different people at different times, that's undisputed. Dr. Doe actually admits to this in his own complaint. So, moving on to some of the other issues that Dr. Stone rose. Can I follow up on that?  I'm not, at the end of the day, I'm not sure any of this matters because all that we're really dealing with is the question of jurisdiction on the APA claim, right? And so, as I understand this ICC versus DLE style claim, it's based on the agency refusing to grant reconsideration based on the presentation of new evidence. That claim can't exist until the evidence is presented to the agency. Yes, and so I'll pivot to that. So, I think the issue with the DLE is there is this disagreement regarding kind of what level, what constitutes new evidence and what kind of review a court can conduct in determining whether it has jurisdiction to consider the question based on this new evidence. I think where Justice Oldham mentioned the question of whether something needs to be materially new, I think Mr. Stone answered the question, but he answered it in a way that would remove all materiality from the analysis. If I may, I think there are two issues, just to help facilitate the conversation. One is whether we have new evidence and two is the timing issue. Just as to the timing issue, I'm not sure it matters what happened before. The point to me is once the evidence was presented to the agency and the agency refused to do anything with it, that's when this claim is ripe, isn't it? Well, I'm not sure that I would agree with that, Your Honor, mainly because the original- How can they sue when the agency hasn't granted reconsideration because it's not been given any new evidence? You would be able to sue based on that, Your Honor, but I guess if we're talking about the review and we're talking about the due process claim, the procedural due process claim, I think those two are two different things, mainly because the original proceeding here, it could actually include the DC proceeding. And I'll say what is, I think, the most important factor as to why that may be true. The original proceeding itself included a remand to the agency in 2015 after the 2012 original decision to maintain the publication. So as far as what even an original proceeding means under BLE, even if that isn't dicta, even if that is part of the actual holding, the actual proceeding itself included a remand in 2015 and included the possibility of further remands or further proceedings related to that initial decision. So that's why I think this case is so unique as far as review of agency action compared to some other cases, because this case included a continuous litigation of the matter for close to a decade. And so turning on more to the due process claim and, you know, to kind of answer that kind of question as to whether or when it would become right, I think, I think it's true that a procedural due process claim here could only be asserted for once there's a denial of the reconsideration. However, Your Honor, I think what we have here, we have a bait and switch where claim, Dr. Doe is claiming that the violation now, I believe he's recharacterizing the claim, but that he's claiming now that it's a failure to reconsider it. However, the violation in the brief and in his actual third cause of action is an allegation that there's been a violation based on the publication of the AAR and the continued publication of the AAR. If failure to reconsider really is what the procedural due process violation is here, then there would be no deprivation. There would be no coercion because reconsideration itself is discretionary. And even if there is new evidence, an agency is not required to reconsider even with that new evidence. And that's not even getting into this question as to whether there's new evidence at all, because if there is no new evidence, there is no jurisdiction. There's no waiver of sovereign immunity. If there's no new evidence, there's no defective procedure or inadequate process. And the district court in answering the res judicata question already answered the question about whether there's new evidence in the res judicata context. And the same reasoning would apply in this context. And it actually would be stronger because BLE and this whole issue as to focusing on the original proceeding or not, that doesn't control in the due process analysis. If due process claim here is really focused on the denial of the reconsideration, then the panel should look at the procedural opportunities to present this, quote unquote, new evidence prior to the denial of the reconsideration. That's what would be material. And the district court already considered this in the res judicata analysis. So even if res judicata doesn't apply, there's sufficient evidence in the record and in the district court's analysis for the court to remand, I mean, to not have to remand to actually rule on this on this issue itself. In other words, to rule on in the first instance rather than let the district court decide in the first instance. Yes, yes. I guess what I'm thinking is one way to go. I see your point that we could render on due process. But another way to go is to do narrow remand on both claims, right? Not reaching their merits on either. But simply noting that APA, there is jurisdiction. And I take your point that a lot of the due process claim may be subject to res judicata, but perhaps not all. Yes, I will just say that to the extent that it would, I'm not sure that. Look, if there is an analysis that there is new evidence, which I'd like to go into why I don't believe that the evidence that Dr. Stone is pointing to would constitute new evidence. But if there is no new evidence, then I think the way you answer that question negatively would also affect the due process claim. So the problem would be that you, the claims would merge and you wouldn't be able to have a due process violation without having the review in the, looking at this through the APA violation. You think there's jurisdiction, right? I mean, not just some other merits things that we want to send back. You think there's jurisdictional issues and that's something we should look at, right? Exactly, because there's no new evidence. And so if you, even under Mr. Stone's kind of low standard about what would be new evidence, whether it's probative and whether it's new. I think the issue here is if there is no new evidence, there cannot be jurisdiction and there cannot be a due process violation. And that's not even getting to the point with whether the inaction itself could constitute some sort of coercive action or deprivation of some sort of right. And I think the DOE I court kind of went into some of this as to regarding whether there is even a deprivation of a property right. And that's the issue that right now, Dr. Doe is hoping that a different tribunal answers differently. But again, if there is no new evidence, there can't be jurisdiction. And so there would be no need to remand kind of on that issue. But I think if there are no questions on that point, I'd like to pivot more towards the new evidence and to rebut some of the points that Mr. Stone made. So the three different categories of evidence that Mr. Stone has kind of raised here, the one that he said was what he thought was the most important, this kind of statement in a New York, in this New York civil litigation from the hospital regarding kind of the record evidence and whether there was any sort of contemplation about some sort of corrective action with him. First, I think it's important for two things. One, in the brief, Mr. Stone kind of challenges the court being able to kind of consider those proceedings in general. And I think that I think it's important to note that the court could take judicial notice of those. The court and this panel can take judicial notice of that since Dr. Doe actually incorporated by reference those proceedings. He even cited specifically to the record in that New York proceeding where these statements were made. And I will say, and I will say, and we argued this in our brief, that Dr. Doe has consistently misquoted and removed context from the actual quote itself. So to the extent that anyone would consider whether this could be material or whether it could actually affect, even possibly affect the agency's decision, I think it's important to look at that full quote and the full statement. And we're much more, you know, as lawyers, we're a little bit more familiar with kind of the caveats related to the summary judgment and record evidence. And I think it's important to look at it through the lens of those kinds of legal standards when you're looking at what that statement actually meant. But more importantly, I think the panel kind of hit on something that's important. Whether any of this evidence could possibly have affected the agency's decision is only possible if we re-litigate the meaning of investigation. So what Dr. Doe is hoping here is that by presenting all of these different pieces of evidence that turn on things like whether he was actually suspended, whether the hospital followed bylaws, whether a meeting actually occurred, none of these things are actually material or would affect the outcome unless we re-litigate the definition of investigation from it's from right now. It's what the DOE court said was a systemic review. And so here, while we're on this materiality question, because I'm grateful that you're focusing on it, but I just want to make sure that we're all speaking in the same language. Because we see this in other lots of other circumstances. So I'm going to pivot you to something that you probably don't deal with every day, but we do. And that is post-conviction litigation. So in a post-conviction case, we can have a claim that says, look, there was racial discrimination in my jury selection. That's one claim based on one set of facts. If somebody comes forward in another set, like a different phase of the litigation and says, by the way, here's a new set of facts that shows my attorney was ineffective, right? That's a new claim easily, right? New set of law that obviously requires a new factual record. So my sense would be that that is definitely a new claim and that is definitely new facts and it's based on new evidence. But I would never make the prisoner show that you are jurisdictionally barred from presenting it unless you can show that you would have won. So I just want to be precise about what we mean when we say material and new evidence, which is that, yes, I get it. Those need to be different in some meaningful way, but it can't possibly be meaningful only if you win. Yes, yes, and that's a well-taken point. And I'm not arguing that any of this evidence would, you know, would in some sort of merits analysis kind of tip the scales. I'm saying that it's not even relevant to the ultimate decision at all. So, for example, there's a lot of focus on whether Dr. Doe was ultimately suspended. Some of the evidence that Mr. Stone even brought up right now, he's painting the picture of these statements made by certain hospital employees regarding Dr. Doe never having been suspended at all. Well, the thing is, the suspension issue isn't even in, it's not in the AAR. It would not affect the definition of investigation. There was already record evidence that the secretary considered and cited and Dr. Doe cites in his own complaint that cast questions on whether he was actually suspended or not. Dr. Doe himself cites statements from the lawyer for the hospital where the lawyer for the hospital indicated that Dr. Doe voluntarily suspended his surgical privileges in lieu of a suspension. So there is already record evidence there that there is a question as to whether he was suspended and there was already evidence in the record that he was not suspended. And ultimately, that doesn't go towards investigation and that doesn't go towards anything in the actual AAR. And that's the same thing for the third bucket of evidence that Dr. Doe cited in his brief, and that has to do with that Root Cause Committee hearing and whether there was this doctor that attended the hearing or not. Again, it's not in the AAR. It doesn't affect whether there was a systematic review and thus an investigation. And there was already evidence in the record that this person may not have attended the meeting in the way that it was presented. So this is already evidence there. And this, I think, falls more in the Smalls versus Spencer case where they're in the district there's the district court, but the District of Columbia there, they found that this type of evidence that is merely kind of cumulative or is cumulative or even maybe more just redundant is not meaningfully new evidence. So it's not just like some talismanic issue where it's newly generated or new. And that itself is considered as new evidence and would trigger a kind of review. And that's the same thing for this corrective action statement. And we've done a more in-depth job briefing why this isn't, why it would not go towards the decision of the secretary. But this idea that they didn't contemplate corrective action, the only way that this is material or even considered by it is if you accept Dr. Doe's recharacterization as to what investigation means, whether they were proceeding under some like automatic trigger for reporting that was never mentioned in the AR, which was never mentioned in the secretary's denial. Dr. Doe is actually asking the panel and the court to go beyond what the secretary did and to look at guidebooks and regulatory guidance to re-litigate that definition of investigation. So this isn't an issue as to whether this kind of evidence would tip the scales or whether it would do, it's nothing more than just whether this evidence is relevant.  And as my time is wrapping up, I just want to point out that the problem with kind of the res judicata and the idea that you can open the door to the litigation of the substantive issue here, the continued publication of the AR by merely claiming that you presented some evidence that you chose to not present before, but that now you chose it. And you can just re-litigate underlying action, which is what Dr. Doe is trying to do here. He's trying to re-litigate what an investigation is and the accuracy of the report. The idea that you can open that door by merely claiming, by cobbling together sentences and a complaint and trying to recast this claim kind of in the appellate court, it would lead to the absurd result of there being no finality. And that is something that in the very, the first case, in the BLE case that Judge Scalia was very, Justice Scalia was very concerned about. This idea that if you can continue to re-litigate whether there has been some sort of material error as opposed to just whether there's jurisdiction to consider the question about new evidence, now you're distorting the decision completely. You're just always allowing the re-litigation of this. And that's something that we see in this case. This case is special. It isn't the case where there's been even some sort of break in time and there's been new evidence and there's been new, and Dr. Doe has come forward with some meaningful argument. This is the exact same litigation that has been happening for over a decade and close to two, and there has to be some sort of finality. So is your concern that this has just been going on for like, I think we're at 16 years now, and that if we were to remand it, it just keeps going, going, going, going, and you feel like this has already been addressed in all of these cases that existed before? Is that what you're saying? It has. And there was even a reference in the magistrate judge's report and recommendation regarding freedom of information requests that are still pending. The decision here, if we adopt Dr. Doe's interpretation of this, it would continue. There would be more and more evidence, regardless of its level of whether it be meaningfully new evidence or not, that could continue to allow him to litigate this in perpetuity. Okay. Anybody have any more questions for Mr. Garcia? Okay. Thank you, sir. We'll now have rebuttal from Mr. Stout. Thank you, Your Honor. I'm just going to make a couple of quick points. So first, I heard my friend on the other side spend quite a bit of his time trying to evince this court that ultimately this evidence isn't new because it's not going to change the agency's mind. Judge Oldham, as you, I think, rightly pointed out, the standard can't possibly be that evidence is only new for the jurisdictional threshold question when it's sufficient to be dispositive of the underlying claim. That can't be right. But more importantly, Chenery blocks exactly that move. Chenery means that the agency is stuck with what it said. What it said here is you get no more process. It did not say we've looked at your evidence and we find it unpersuasive. It didn't say we've looked at your evidence and we find it cumulative. It didn't say, gosh, we stand by our previous reasoning behind the meaning of investigate, whether you committed malpractice or anything, any of this. Chenery locks the agency on judicial review to the basis it gave. And the basis it gave was one sentence saying that it determined Dr. Doe gets no more process. Whether or not, assuming Dr. Doe prevails on this APA claim and the reconsideration summary denial set aside, whether or not those would be valid bases to deny the petition for reconsideration after a review, that may or may not be the case. I think that's a difficult merits question. But this, first of all, it's certainly not an appellate function. That is certainly at least a trial court function, if not an agency function. But don't we have to look at jurisdictional? And so you can always bring up something that's, quote, new. But if it's not material, then it's not then the jurisdictional issue. We sometimes bring up jurisdiction. So jurisdiction matters. You certainly have to. I guess there's two different points here, Your Honor. I agree with you. Jurisdiction matters. What I'm saying is for purposes of figuring out if something is new evidence, all this court has to assure itself of is that it wasn't available in the original proceeding. This court can know that for a certainty on account of the fact the original proceeding ended in 2012 and everything upon which Dr. Doe's relying ran from 2016 to 2023. Now, I agree with you. If the full record were here and you were eventually reviewing the merits, whether or not something's persuasive and all of that, all these other bases on which HHS is trying to rely, then this court would be in a position of testing those. But I think this court's function for the initial threshold jurisdictional step, much simpler and a much lower hurdle. It was the idea, essentially, you may or may not be destined to lose the war, but you're entitled to win this battle. That's right. That's exactly right, Your Honor. We're not saying that you need to come in and rule that, yes, ultimately we win before the agency. We're a million miles from that. Not only that, what I hear counsel saying on the other side is that the agency's already told you you're going to lose. Your point is it doesn't matter. You're entitled to win this battle. That's right. Your Honor, to be perfectly frank, I'm not going to hold my friend on the other side against that statement because if he meant that, that goes in the face of the presumption of good faith and the presumption of ordinary action that an agency takes. We're not going to assume the agency is just going to say no because it said no before. The agency hasn't considered our evidence. We assume they're going to approach it in good faith. Maybe we win, maybe we lose, but we assume we'll get a fair shake. If my friend on the other side wants to say, don't bother, we've already determined this guy loses, well, then he certainly can't complain that my client is dogged in the face of trying to make his point where he I guess that's really where I want to wrap things up is when it comes down to race judicata. Race judicata isn't a doctrine about saying that irritating litigants have to stop someday. It asks whether or not a claim is available in case one. If it was, if it was or could have been raised, it's barred in case two. The reconsideration itself didn't happen until case one was gone and done. Certiorari was denied. By definition, any claim regarding that reconsideration couldn't have been raised in the first case and race judicata is the bar. Mr. Son, I want to make sure that you have time to, and I hope our presiding judge will make sure that you're able to get out if you have additional rebuttal, but I just, I want to make sure that I express a concern and hear your response to it. Every day in this court, we deny or we hold there is no jurisdiction to review the Bureau of Immigration Appeals' denials of motions to reopen, which are similar to what we're describing here every day. And folks come in and they say, look, change country circumstances, you know, these are new facts on the ground in the Congo or wherever, you know, wherever the petitioner's from and say, hey, look, you know, change country circumstances, new facts, the agency has to consider them again. And when the BIA says, no, we're not going to reopen, we've held, the Supreme Court has held, there's no jurisdiction to review that sua sponte denial. How is this different? Like how, so if you win this case, does that mean that all of those, you know, are now, that we have jurisdiction over those and the BIA has to render marriage rulings? No, your honor. So I guess two points about that. One, BLE is from 1987. If the floodgates were going to be opened, they'd be open by now. Two, you know, as well as I do, that the INA is a particularly complicated piece of federal law that involves multiple kinds of jurisdiction stripping provisions, ranging from stripping lower courts of the authority to issue injunctions in circumstances to strip away the ability to rehear certain kinds of cases. This is only defining what is new evidence for petitions for reconsideration when they are allowed by an agency under section 7182 of the Administrative Procedure Act. We're not taking the position, nor does this court have to take a position, that any given agency must hear such petitions or that there's always jurisdiction to hear such petitions, let alone across a variety of organic statutes or other permissible regulations that HHS or anyone else could adopt. This court doesn't have to go remotely so far, and I don't think this would affect jurisdiction in those rehearing petitions at all, precisely because of the architecture of the INA being pretty wildly far afield of what almost every other agency does. Yes, I know. Any other questions? I'll let you make a few sentences. Any other questions for my colleagues? Okay, if you have a few sentences, go ahead. I'll keep it to just one. What we're asking for here is a million miles away from the merits. It's only the threshold question of jurisdiction where we think on plainly on the surface there's new evidence and race judicata is inapplicable because, well, you can't break claim against case two before in case one against action two when action two hasn't existed yet, and that's all, Your Honor. Okay, thank you both. We appreciate y'all's argument, and I'm glad that you're well, Mr. Stone and Mr. Garcia. I appreciate you coming back for another argument, and this case is now under submission, and we will let you go. Thank you, Your Honor.